## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) SHIRLEY ANTWINE, <br>      as administrator for <br>      the Estate of Ernest Eugene <br>      Antwine, | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. CIV-23-359-JD |
| vs. | ) <br> ) | |
| (2) ROBERT A. BURTON, <br>      individually, | ) <br> ) <br> ) | JURY TRIAL DEMANDED |
| (3) ROBERT DUNN, an individual, <br>      and | ) <br> ) <br> ) | |
| (4) JOHN & JANE DOES, <br>      individually, as yet unidentified <br>      police officers, | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE AND OBJECTION TO MOTION OF DEFENDANT ROBERT BURTON TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND BRIEF IN SUPPORT, WITH BRIEF IN SUPPORT

Plaintiff, SHIRLEY ANTWINE, as administrator of the Estate of Ernest Eugene Antwine, by and through her undersigned attorney, responds and OBJECTS to the *Motion of Defendant Robert Burton to Dismiss Plaintiff's Amended Complaint and Brief in Support*, for the following reasons:

## STATEMENT OF FACTS

1.     Plaintiff repeats, realleges, and incorporates the allegations and exhibits in the *Amended Complaint* as though fully set forth herein.  *See* Doc. 9.

## STANDARD OF REVIEW

2.      Plaintiff shows in this Brief that her *Amended Complaint* "has a reasonable likelihood of mustering factual support" to survive a *Motion to Dismiss. Robbins v. Okla. ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1247 (10th Cir. 2008), *quoting Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007).   Plaintiff's claim has to be (and is) plausible and not just possible. *Robbins,* 519 F.3d at 1249, *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

3.      Further, the *Twombly* standard helps to answer questions like a type of immunity for the Defendant.   *Robbins*, 519 F.3d at 1249 (citations omitted). Later, the U.S. Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), clarified *Twombly*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal* at 678, *citing Twombly* at 555. The Court's analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citations omitted).

4.      The Tenth Circuit uses the *Twombly* and *Iqbal* tests when deciding whether a complaint is sufficient under the Federal Rules of Civil Procedure 12(b)(6) for moving forward.   *See, e.g., Kendall State Bank v. W. Point Underwriters, LLC,* No. 10-2319-JTM/KGG, 2011 U.S. Dist. LEXIS 117524, at *9 (D. Kan. Oct. 11, 2011).

5.      Further, the *Twombly* standard serves as a necessary and helpful tool for resolving questions like immunity.   *Robbins*, 519 F.3d at 1249 (citations omitted).   However, questions about qualified immunity raises the standard for the Defendant to meet for a dismissal of Plaintiff's *Amended Complaint*:

> In reviewing a Rule 12(b)(6) motion in the context of qualified immunity, a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Peterson v. Jensen*, 371 F.3d 1199, 1201-02 (10th Cir. 2004) (citations omitted) (emphasis added).

## ARGUMENT

6.      Plaintiff repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

7.      There is enough factual evidence in the *Amended Complaint* to dismiss *Motion of Defendant Robert Burton to Dismiss Plaintiff's Amended Complaint and Brief in Support,* as the facts show that Defendant, ROBERT A. BURTON, had the bad faith, malice, and reckless indifference to support Plaintiff's claims of Fourteenth Amendment violations under 42 U.S.C § 1983 and negligence in the death of Ernest Eugene Antwine.  However, Defendant ROBERT A. BURTON puts forth two major but fundamental incorrect propositions in his *Motion to Dismiss*:

1) Defendant Burton is entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim, and

2) Plaintiff has failed to state a claim against Defendant Burton for negligence.

3

Doc. 13 at 4, 10.  He does *not* have that qualified immunity from allegations of negligence and constitutional violations because he exercised bad faith, malice, and reckless indifference to Mr. Antwine's serious medical needs, which led to his death.

8.      Plaintiff's Fourteenth Amendment claim and Defendant's qualified immunity defense first rise or fall on whether Defendant showed "deliberate indifference to serious medical needs" of Mr. Antwine.  *Id.* at 4-5.  Defendant is correct that the appropriate test in the Tenth Circuit has objective *and* subjective components.  *Strain v. Regalado,* 977 F. 3d 984, 989 (10ᵗʰ Cir. 2020).  The *Strain* Court had distinguished *Kingsley v. Hendrickson,* 576 U.S. 389, 392, 135 S. Ct. 2466, 2470 (2015), which held that excessive force claims by pretrial detainees about deliberate indifference are only objective and not subjective.  This is not an excessive force claim.  Defendant in fact quotes the objective test as including "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  Doc. 13 at 5, *quoting Strain* and *citing Clark v. Colbert*, 895 F. 3d 1258, 1267 (10ᵗʰ Cir. 2018).  "The focus of the subjective component of the deliberate indifference inquiry is **the mental state of the defendant** regarding the risk of harm."  *Estate of Beauford v. Mesa Cty*., 35 F.4th 1248, 1267 (10th Cir. 2022) (citations omitted) (emphasis added).  Also, "[t]he subjective prong requires a plaintiff to establish that a prison official had 'a sufficiently culpable state of mind." *Id.* (citations omitted).

9.     In this matter, Officer Burton admitted to investigators from the Oklahoma County Sheriff's Office that Mr. Antwine "was a **known** mental health consumer, PCP user, and homeless." Doc. 9, Amend. Comp., Ex. 2 at 3 (emphasis added).  He also admitted to "forcibly removing Mr. Antwine" and taking him to "no man's land" along North Sooner Road.  *Id.*  Drug addiction and abuse is a health problem that can require the care of medical and mental health professionals.  *See, e.g., Stigma Reduction,* Centers for Disease Control and Prevention (April 10, 2023), https://www.cdc.gov/stopoverdose/stigma/index.html.  Mr. Antwine was not thinking rationally, though he was not apparently unconscious.  Underlying mental health problems contributed to this problem.  He needed a doctor and a police officer to take him to one.  Defendant relies upon *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995 (10th Cir. 1994) for the proposition that intoxicated detainees are not obviously in need of care.  In *Estate of Hocker,* the deceased had intermittent incidences of coherent and incoherent behavior over a few days before committing suicide.  In this matter, Mr. Antwine was so out of control that Officer Burton used force to remove him from Plaintiff's home and was killed only a few minutes after quickly being deposited in a vacant lot.   Officer Burton knew full well that Mr. Antwine had conditions requiring care but did nothing about it except to take him from Plaintiff's porch and dump him in "no man's land."  Numerous other medical conditions could have caused Mr. Antwine's behavior, but Officer Burton made judgments on his own and not with medical guidance or examination of Mr. Antwine, who was in a highly agitated mental and compromised physical state.

10.     Then, officers told Plaintiff that they were taking her son to the Oklahoma County Jail, but they did not do that.  Doc. 9, Amend. Comp. Ex. 5 at 3. Defendant wants this Court to believe that he had no duty to arrest Plaintiff on the warrant in *State v. Antwine,* CM-2021-1684 (Okla. Co.), https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CM-2021-1684&cmid=3986755.  A few months before his death, the District Attorney of Oklahoma County charged Mr. Antwine in the Oklahoma County District Court on allegations of unlawful possession of controlled drug-PCP-phencyclidine, in violation of 64 §§ 2-401-2-420.  An arrest warrant was issued on or about June 25, 2021.  It is not apparent from the incident reports, included as exhibits in the *Amended Complaint*, that anyone ran a background check on Mr. Antwine at the scene on August 4, 2021.  But Officer Burton already knew Mr. Antwine had a criminal history and a drug problem before he even arrived at Plaintiff's home after a 911 call.

11.     As a matter of professional competence and reasonableness, Officer Burton should have done what the Oklahoma County District Court required and executed the warrant for Mr. Antwine's arrest, but he failed to do so.

12.     Under Oklahoma law, a magistrate has a mandatory duty to issue an arrest warrant "if satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it."  22 O.S. § 171.

13.     Arrest warrants "may be served by any peace officer to whom they may be directed or delivered." *Id.* at § 175.  Arresting officers are required to present the object of the warrant to the court if the charges involve a felony. *Id.* at § 176.

14.     There admittedly would be more discretion for misdemeanors. After November 1, 2023, officers will have even more discretion, like whether to warn of a warrant in another county or to arrest the defendant. *Id.* at § 177.

15.     However, a  "warrant must be directed to and executed by a peace officer." *Id.* at § 174.  This language appears to be mandatory.  The statute does not explicitly say executing a misdemeanor warrant is mandatory, but taking the statutes as a whole, it appears that a reasonable officer should have discovered and executed an arrest warrant in these circumstances.

16.     Officer Burton had arrested Mr. Antwine, as "[a]s an arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer." *Id.* at § 190.

17.     By failing to execute and enforce the warrant after an arrest, Mr. Burton showed bad faith and malice, otherwise acting outside of his employment as a police officer.  Discovery could detail the extent of what Officer Burton knew and did about the warrant.  But there are enough facts right now to infer that Officer Burton arrested Mr. Antwine only to set him free while he was high on PCP and a danger to himself and others.

18.     Generally, *DeCorte v. Robinson*, 1998 OK 87, ¶ 15, 969 P.2d 358, 362, noted that governmental actors have immunity under 51 O.S. § 155(4) from "a loss or claim results from reasonable enforcement or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy."

19.     In *DeCorte,* the Oklahoma Supreme Court affirmed the finding of a District Court that an off-duty police officer awarding punitive damages for injuring the Plaintiff even if the officer were acting within the scope of his employment. *Id.*

20.     As pleaded in the *Amended Complaint,* under the color of law, Officer Burton was not acting within the scope of his employment when knew that Mr. Antwine was a serious threat to himself or others and was suffering severe mental and physical symptoms but failed to send for and/or provide him with the proper care or at least take him to jail for a warrant.

21.     As the Oklahoma Governmental Tort Claims Act says clearly:

> performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud;

51 O.S. § 152.   Malice or bad faith moves the behavior from the scope of employment. *Dahshan v. State ex rel. Bd. of Regents of the Univ. of Okla*., No. 08-CV-370-TCK-FHM, 2008 U.S. Dist. LEXIS 92262, at *27 (N.D. Okla. Nov. 12, 2008), *quoting Pellegrino v. State of Okla., ex rel. Cameron Univ.,* 2003 OK 2, 63 P.3d 535, 537; *see also Carswell v. Okla. State Univ*., 1999 OK 102, 995 P.2d 1118.

22.     Under Oklahoma law, malice or bad faith in this context has concrete

elements:

> If an employee acts outside the scope of employment, the political
> subdivision is immune from liability. 51 O.S.1991 § 153. A malicious
> prosecution action against a municipality presents a real problem
> when considering the "good faith" requirement set forth in the
> definition of "scope of employment." Malicious prosecution requires,
> as elements to be proven, lack of probable cause and malice. *Page v.
> Rose,* 546 P.2d 617, 620 (Okla. 1976). These two elements
> necessarily include some degree of bad faith. *El Reno Gas & Elec.
> Co. v. Spurgeon,* 30 Okla. 88, 118 P. 397, 400 (Okla. 1911). In *Park
> v. Security Bank & Trust Co.,* 512 P.2d 113, 119 (Okla. 1973), we held
> that to show malice in a malicious prosecution claim, the defendant
> must have acted because of ill-will or hatred, or willfully in a wanton
> manner. Malice is a "condition of mind which prompts a person to do
> a wrongful act willfully. . . ." Black's Law Dictionary (5th Ed.).

*Parker v. City of Midwest City*, 1993 OK 29, ¶ 12, 850 P.2d 1065, 1068.

There are both implicit malice and explicit malice:

> The third element of the action for malicious prosecution, malice,
> does not necessarily mean "'malus animus," *i.e.*, that the action
> complained of was actuated by ill will or hatred toward the person
> prosecuted. **It is sufficient if the known and necessary consequence
> of the act done is injury to that person.** "By it is meant an
> unreasonable and wrongful act done intentionally, without just cause
> or excuse." *Schonwald v. Ragains*, 32 Okl. 223, 122 P. 203. When it
> so appears the law will imply malice. However, express malice, i.e.,
> actual ill feeling toward the person injured, may also be proved to
> exist, and in the cause at bar there was evidence tending to prove
> express malice. When so established, it forms a basis for exemplary
> damages, irrespective of that arising by presumption. Section 5975,
> C.O.S. 1921.

*Park v. Sec. Bank & Tr. Co*., 1973 OK 72, ¶ 29, 512 P.2d 113, 119 (emphasis added).

Officer Burton did not have to hate or scorn Mr. Antwine personally to show his

bad faith and malice – his failure to get help resulted in the ultimate and wrongful death of Mr. Antwine.

23.     Defendant relies heavily upon *Graham v. City of Lone Grove,* 2022 WL 2070607 (E.D. Okla. June 8, 2022) for the premise that reckless disregard is not necessarily bad faith or malice.  The *Graham* Court emphasized the need for evidence of malice or bad faith.  As the *Park* Court said long ago, "It is sufficient if the known and necessary consequence of the act done is injury to that person." *Park,* 1973 OK at ¶ 29.  Defendant also notes how the Oklahoma Supreme Court in *Gowens v. Barstow,* 2015 OK 85, 364 P. 3d 644, 652, distinguished reckless disregard from bad faith or malice.  But the *Gowens* Court said that "shall be made on a case-by-case basis."  *Id.* at ¶ 21.  In this matter, the Fourteenth Amendment claim requires proof of deliberate indifference, while the negligence claim requires breach of a reasonable duty and standard of care, resulting in Mr. Antwine's wrongful death.  Defendant then argues that *Kruzhov v. State*, 2006 OK CIV APP 114, 144 P. 3d 186, is the most on-point case to this matter.  In that case, the Court indeed did not reach explicitly the question of whether the trooper acted within or without the scope of his employment.  Instead, it presumed that it was within that scope.  The deceased in the *Kruzhov* case was not arrested or otherwise taken into custody.  The *Kruzhov* Court at ¶ 22 relied upon *Salazar v. City of Oklahoma City,* 1999 OK 20, 976 P.2d 1056 to sort out immunity issues in negligence claims against governmental actors.  But, that Court admitted that 51 O.S. § 155(6) "did

not give blanket immunity for carrying out law enforcement duties." In this matter, Mr. Antwine was arrested or at least taken into custody. Officer Burton

24. Proof of bad faith or malice establishes that Officer Burton acted outside of his scope of employment and showed deliberate indifference to Mr. Antwine's serious medical needs and safety. By failing to call for medical care and by dumping him at an empty lot, Mr. Burton was maliciously and deliberately indifferent to Mr. Antwine. That deliberate indifference also functions as evidence of bad faith and malice, though they are not necessarily synonymous. He did not care about Mr. Antwine's actual needs. Perhaps he was callous to seeing one too many people tripping on PCP or some other illegal drug. Perhaps he had been lied to one too many times by addicts. That makes no difference: a reasonable person should have seen that Mr. Antwine needed serious help beyond being removed from a scene. That is why Plaintiff – his mother who misses and still loves him – had called 911. Plaintiff relied upon Mr. Burton by calling 911, expecting he would make certain she *and* her son were safe. He failed both of them. He was negligent and also violated Mr. Antwine's Fourteenth Amendment rights under 42 U.S.C. § 1983. If he exercised bad faith and malice, and thus deliberate indifference or even reckless disregard, he had more than enough intent for Plaintiff to prove negligence. Based upon the foregoing law and the record thus far, there is enough factual evidence in the *Amended Complaint* to dismiss *Motion of Defendant Robert Burton to Dismiss Plaintiff's Amended Complaint and Brief in Support.*

11

## CONCLUSION

WHEREFORE, Plaintiff, SHIRLEY ANTWINE, respectfully OBJECTS to the *Motion of Defendant Robert Burton to Dismiss Plaintiff's Amended Complaint and Brief in Support*, prays this Honorable Court would DISMISS it immediately, and continues to request that this Court grant the previously requested relief, including but not limited to actual, compensatory, and punitive damages of at least Seventy-Five Thousand Dollars ($75,000.00), with accrued interest from the date of the filing of this matter, along with reasonable attorney fees and costs and any other relief as this Court deems just and equitable.

Dated: July 4, 2023          Respectfully submitted,

THE LAW OFFICE OF KEVIN R. KEMPER, PLLC

By:

/s/ *Kevin R. Kemper*
Kevin R. Kemper, Esq.
Oklahoma State Bar No. 32968
P.O. Box 454
114 W. Harrison, Suite 201
Guthrie, OK 73044
kemperlawoffice@gmail.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on or about this date, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Chris J. Collins, OBA No. 1800
Stacey Haws Felkner, OBA No. 14737
COLLINS, ZORN & WAGNER, PLLC
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815

12

E-mail: cjc@czwlaw.com
shf@czwlaw.com
***Attorneys for Defendant Robert Burton***

Michael G. McAtee
MCATEE & WOODS, P.C.
410 N.W. 13th Street
Oklahoma City, OK 73103
Email: mikem@mcateeandwoods.com
***Attorney for Defendant Robert Dunn***

/s/*Kevin R. Kemper*
KEVIN R. KEMPER