## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHIRLEY ANTWINE, as administrator for the Estate of Ernest Eugene Antwine, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No. CIV-23-00359-JD |
| | ) | |
| ROBERT A. BURTON, individually; ROBERT DUNN, an individual; and JOHN/JANE DOES, individually, as yet unidentified police officers, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Robert Burton's Motion to Dismiss Plaintiff's

Second Amended Complaint ("Motion"). [Doc. No. 21]. The Motion seeks to dismiss

Plaintiff Shirley Antwine's Second Amended Complaint ("SAC") [Doc. No. 18] under

Federal Rule of Civil Procedure 12(b)(6). Defendant Burton asserts that he is entitled to

qualified immunity on Plaintiff's Fourteenth Amendment claim and is immune from

Plaintiff's state-law negligence claim under the Oklahoma Governmental Tort Claims Act

("GTCA"). Plaintiff filed a response in opposition ("Response") [Doc. No. 22] to which

Defendant Burton replied ("Reply") [Doc. No. 23]. For the reasons stated below, the

Court grants the Motion.

## I.    BACKGROUND

This case arises from the tragic death of Plaintiff's son, Ernest Eugene Antwine.

Accepting as true the well-pleaded facts in the SAC, on August 4, 2021, at 1:21 p.m.,

Plaintiff called the police to report concerns about Mr. Antwine's behavior. SAC ¶ 17. Mr. Antwine had been banging on Plaintiff's door with a stick and "trying to get into her house." [Doc. No. 18-5 at 5].[1] "Mr. Antwine used and abused PCP and other drugs," he "had been diagnosed with mental health disorders like schizophrenia," and he had a "long history" with the Oklahoma City Police Department. SAC ¶¶ 13, 28. A warrant for Mr. Antwine's arrest was outstanding on August 4, 2021. *Id.* ¶ 16.

Officers with the Oklahoma City Police Department—including Defendant Burton—responded to Plaintiff's call at 1:33 p.m. *Id.* ¶ 18. Defendant Burton took custody of Mr. Antwine and removed him from Plaintiff's property. *Id.* ¶ 20. Then, instead of taking Mr. Antwine to jail, Defendant Burton put Mr. Antwine in Burton's patrol vehicle and drove him to "a vacant lot on the corner of N.E. 10th Street and Sooner Road." *Id.* ¶¶ 20–21. Defendant Burton left Mr. Antwine at the vacant lot "so he could go to a job interview," and he called police dispatch at 2:00 p.m. to clear the incident. *Id.* ¶¶ 21–22.

Within minutes, Mr. Antwine was struck and killed by an automobile. *Id.* ¶¶ 23, 25–26. A witness called police at 2:05 p.m. to report the collision, which occurred north of the vacant lot where Defendant Burton had left Mr. Antwine five minutes earlier. *Id.* ¶ 23. Officers found Mr. Antwine's body lying in the street. *Id.* ¶ 25. During the

---

[1] "In addition to the allegations contained in the complaint, the court may consider attached exhibits and documents incorporated into the complaint, so long as the parties do not dispute the documents' authenticity." *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012).

investigation, Defendant Burton told investigating officers that Mr. Antwine "was a known mental health consumer, PCP user, and homeless." *Id.* ¶ 28. He stated that he "dropped off" Mr. Antwine "in 'no man's land' (referring to the gravel road on the west side of the road at 1399 N. Sooner Rd.) after forcefully removing him from the front porch of his mother's home." *Id.* ¶ 30. The medical examiner determined Mr. Antwine's cause of death to be "multiple blunt force injuries" he had sustained in an "accident." *Id.* ¶ 34. In addition, the examiner "diagnosed acute phencyclidine (PCP) toxicity, as Mr. Antwine's concentration of PCP in his femoral blood was 620 ng/ml." *Id.* ¶ 37.

Plaintiff sued Defendant Burton in his individual capacity.[2] *Id.* ¶ 6. Plaintiff raises two claims against Defendant Burton: First, she brings a claim under 42 U.S.C. § 1983, alleging that Defendant Burton failed to provide Mr. Antwine with adequate medical care in violation of the Eighth and/or Fourteenth Amendments. SAC ¶¶ 1, 39–46. "By failing to call for medical care and by dumping him at an empty lot," Plaintiff alleges, Defendant Burton "was deliberately indifferent to Mr. Antwine's serious and obvious health and safety concerns." *Id.* ¶ 41. Second, Plaintiff raises a negligence claim under state law, alleging that Defendant Burton "negligently failed to call for medical assistance for physical and/or mental health concerns or provide any first aid for Mr. Antwine," instead "shov[ing] Mr. Antwine into his patrol car, only to drop him off a few minutes later in 'no

---

[2] Plaintiff also named Defendant Robert Dunn, but she has settled and dismissed her negligence claim against him with prejudice. [Doc. Nos. 24, 27]. Plaintiff further listed "John and Jane Does" as unidentified police officers in the SAC, but she did not plead any claims against the unidentified officers. Thus, the only remaining claims for disposition are those against Defendant Burton.

man's land' by himself without any help or supervision." *Id.* ¶¶ 49–50. For relief, Plaintiff

seeks compensatory and punitive damages in excess of $75,000, as well as costs and

attorney's fees. *Id.* at 11.

## II.    <u>LEGAL STANDARDS</u>

### A.    **Motions to Dismiss**

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* Under this standard, the Court accepts the well-

pleaded facts alleged as true and views them in the light most favorable to the nonmoving

party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice," and the Court must "draw on its judicial

experience and common sense" to determine whether a complaint states a plausible claim

for relief. *Iqbal*, 556 U.S. at 678–79. "In other words, dismissal under Rule 12(b)(6) is

appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice

of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017).

### B.    **Qualified Immunity**

Section 1983 provides a federal cause of action against a person acting under color

of state law who "subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Under the doctrine of qualified immunity, when an official is sued under § 1983 in their individual capacity, they "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Once a defendant raises qualified immunity in a motion to dismiss, the burden shifts to the plaintiff to show: (1) the plaintiff has alleged facts that make out a violation of a constitutional right, and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (discussing the standard for qualified immunity at the pleading stage). Judges are "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (alteration in

5

original) (quoting *al-Kidd*, 563 U.S. at 743). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)).

The "clearly established" standard "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). Nevertheless, the "analysis is not a 'scavenger hunt for prior cases with precisely the same facts,' and 'a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law.'" *Est. of Smart ex rel. Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (citations omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "[T]he proper standard for evaluating dismissal in a qualified immunity case is the normal standard [courts] apply to dismissals generally." *Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir. 2006). At the pleading stage, that means that "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*,

6

519 F.3d 1242, 1249 (10th Cir. 2008). Plaintiffs bear a lighter burden when attempting to

overcome qualified immunity raised in a motion to dismiss than they do at summary

judgment. At the pleading stage, "it is the defendant's conduct *as alleged in the complaint*

that is scrutinized for 'objective legal reasonableness,'" whereas, at summary judgment,

"the plaintiff can no longer rest on the pleadings and the court looks to the evidence

before it." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (citation omitted). *But see*

*Robbins*, 519 F.3d at 1249 (reasoning that "[t]he *Twombly* standard may have greater

bite" in the context of § 1983 suits against individual state actors to reflect "the special

interest in resolving the affirmative defense of qualified immunity 'at the earliest possible

stage of a litigation'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987))).

## III.  ANALYSIS

### A.    Plaintiff has not shown that Defendant Burton violated Mr. Antwine's clearly established Fourteenth Amendment rights.[3]

Defendant Burton moves to dismiss Plaintiff's claim that Burton was deliberately

indifferent to Mr. Antwine's medical needs, arguing that he is entitled to qualified

---

[3] The parties' briefs also discuss whether Defendant Burton violated a constitutional duty to execute the warrant for Mr. Antwine's arrest, relying on the Supreme Court's decisions in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and *Castle Rock v. Gonzales*, 545 U.S. 748 (2005). *See* Motion at 8–11; Response at 7–8; Reply at 5. However, the SAC—which was drafted by an attorney and is not entitled to a liberal construction—does not raise a constitutional claim on these grounds, and "[i]t is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *Boyer v. Bd. of Cnty. Comm'rs*, 922 F. Supp. 476, 482 (D. Kan. 1996), *aff'd*, 108 F.3d 1388 (10th Cir. 1997). Accordingly, the Court only addresses Plaintiff's claim for deliberate indifference under the Fourteenth Amendment.

immunity. Motion at 5–8. Defendant Burton asserts that the SAC does not allege that Mr. Antwine was suffering an objectively serious medical need such that it would have been obvious to a layperson that Mr. Antwine required medical attention. *Id.* at 6. Moreover, Defendant Burton argues, Plaintiff has not alleged that Defendant Burton knew of and disregarded an excessive risk to Mr. Antwine's health or safety. *Id.* at 7–8. Because Plaintiff has not plausibly alleged that Defendant Burton violated Mr. Antwine's clearly established constitutional rights, Defendant Burton asserts that he is entitled to qualified immunity. *Id.* at 8. In her response, Plaintiff argues that Mr. Antwine's drug addiction and his "[u]nderlying mental health problems" presented an objectively serious medical need. Response at 5. Subjectively, Plaintiff asserts, Defendant Burton "knew Mr. Antwine had a criminal history, mental illness, and a drug problem," but he "did nothing about it except to take him from Plaintiff's porch and dump him in 'no man's land.'" *Id.* at 6–7. Thus, Plaintiff argues, she has stated a claim for deliberate indifference under the Fourteenth Amendment. *Id.* at 12.

"The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment." *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017). A prisoner states a claim under the Eighth Amendment for inadequate medical attention if he "allege[s] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, pretrial detainees can state a Fourteenth Amendment claim under the same standard. Pretrial

detainees may bring such claims against police officers as well as jail officials. *See Rife*, 854 F.3d at 647–49.

The Court elects to focus its analysis on the "clearly established" prong of the qualified immunity inquiry. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For Plaintiff to overcome Defendant Burton's assertion of qualified immunity, she must identify Tenth Circuit or Supreme Court precedent that would have put Defendant Burton on notice that his conduct, as alleged, violated the Fourteenth Amendment. In other words, Plaintiff must "identify a case where an officer acting under similar circumstances" as Defendant Burton "was held to have violated" the Eighth or Fourteenth Amendment. *White v. Pauly*, 580 U.S. 73, 79 (2017).

Plaintiff makes virtually no attempt to meet this burden. Plaintiff does not direct the Court's attention to any on-point decision of the Tenth Circuit or United States Supreme Court that would place the contours of the asserted right beyond debate in the factual context presented here. Plaintiff cites three Tenth Circuit cases involving deliberate indifference claims: *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020), *Clark v. Colbert*, 895 F.3d 1258 (10th Cir. 2018), and *Estate of Hocker ex rel. Hocker v. Walsh*, 22 F.3d 995 (10th Cir. 1994).[4] Those cases are all factually inapposite, as *Strain* and *Clark* involved claims that nurses provided inadequate courses of treatment while

---

[4] Plaintiff also cites *Estate of Beauford v. Mesa County*, 35 F.4th 1248 (10th Cir. 2022). However, because that decision "postdate[s] the conduct in question" and therefore "could not have given fair notice" to Defendant Burton, it is "of no use in the clearly established inquiry." *Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004).

detainees were in jail, and the plaintiff in *Hocker* alleged that jail staff maintained an unconstitutional policy of admitting intoxicated, unconscious individuals. None of these cases would have put a police officer on notice that he had a constitutional obligation to provide care to a conscious person in the officer's custody who is schizophrenic and under the influence of PCP.

Further, none of these cases would have put Defendant Burton on notice that his conduct violated the Fourteenth Amendment because none of the defendants in those cases were held to have violated the Eighth or Fourteenth Amendment. *See Strain*, 977 F.3d at 997 ("Although Plaintiff's claims may smack of negligence, we conclude that they fail to rise to the high level of deliberate indifference against any Defendant."); *Clark*, 895 F.3d at 1269 ("In short, neither the objective nor subjective requirements of a medical needs claim can be met on these facts."); *Hocker*, 22 F.3d at 999–1000 (affirming grant of summary judgment in favor of the sheriff and jail). Therefore, Plaintiff has failed to meet her burden of showing Defendant Burton violated clearly established law. "On this basis alone," the Court could conclude that Plaintiff has not "properly laid the groundwork" to overcome Defendant Burton's assertion of qualified immunity. *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015); *cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (explaining that "[i]n our adversarial system of adjudication, we follow the principle of party presentation [and] . . . . rely on the parties to frame the issues for decision").

Nevertheless, the Court has reviewed the cases discussed by both parties and conducted its own survey of the case law. *See Cortez v. McCauley*, 478 F.3d 1108, 1122

n.19 (10th Cir. 2007) (en banc) ("While it is true that Plaintiffs should cite to what constitutes clearly established law, [the Court is] not restricted to the cases cited by them. Whether law is clearly established is a legal question, reviewed de novo, with full knowledge of the law." (citing *Elder v. Holloway*, 510 U.S. 510, 513–14, 516 (1994))). In light of this review, the Court concludes that on August 4, 2021, there was not clearly established law that would have put Defendant Burton on notice that his conduct was violative of the Fourteenth Amendment.

As Defendant Burton notes, it is not clearly established that an officer must provide care to a person in custody who is under the influence of drugs or alcohol yet remains conscious and responsive. The Tenth Circuit "has decided two key cases concerning the treatment of intoxicated detainees." *Est. of Duke ex rel. Duke v. Gunnison Cnty. Sheriff's Off.*, 752 F. App'x 669, 673 (10th Cir. 2018) (unpublished). In the first case, *Garcia v. Salt Lake County*, 768 F.2d 303, 308 (10th Cir. 1985), the court held that a county jail's "policy of admitting to jail unconscious persons suspected of being intoxicated" violated the Fourteenth Amendment, as the evidence showed "gross deficiencies and deliberate indifference in staffing and procedures to monitor" such persons. In the second case, *Martinez v. Beggs*, 563 F.3d 1082, 1085–87 (10th Cir. 2009), officers arrested an intoxicated man who later died in his jail cell of a heart attack compounded by a toxic blood alcohol level. In contrast to the unconscious detainee in *Garcia*, the detainee in *Martinez* "exhibited 'characteristics that are common to many intoxicated individuals'": namely, he "was conscious, on his feet, argumentative, and cognizant that he was being arrested." *Id.* at 1091 (citation omitted). Thus, because the

11

detainee "was not unconscious and showed no obvious symptoms indicating a risk of serious harm," the court held that the jail officials were not deliberately indifferent to his medical needs. *Id.*

Considering these precedents, the Tenth Circuit has held that officers are entitled to qualified immunity when intoxicated pretrial detainees who are conscious and responsive suffer serious injury or death while in custody. The pretrial detainee in *Duke* died in his jail cell of a drug overdose; "[a] toxicology report showed the presence of fentanyl, cocaine, benzodiazepines, and oxycodone" in his system. 752 F. App'x at 672. Because the detainee, "like the detainee in *Martinez*, exhibited many common characteristics of intoxicated individuals but was responsive and functioning," the court concluded that the jail officials did not violate clearly established law because "it is at least reasonably debatable that *Martinez* rather than *Garcia* provides the controlling precedent." *Id.* at 674. Here, the SAC does not allege that Mr. Antwine was ever unconscious while in Defendant Burton's custody. Thus, as was the case in *Duke*, a reasonable officer could believe that *Martinez* was the controlling precedent, so he did not have a constitutional obligation to provide care to an intoxicated person in his custody who is conscious and responsive.

Plaintiff has not identified a case in which the Tenth Circuit or Supreme Court held that a defendant acting under similar circumstances as Defendant Burton violated the Eighth or Fourteenth Amendment. The Court is aware of no such case. There is not a clearly established weight of authority from other courts that would have put Defendant Burton on notice that he was violating the Fourteenth Amendment. Therefore, the Court

grants Defendant Burton's motion to dismiss Plaintiff's § 1983 claim and dismisses that claim with prejudice because Defendant Burton is entitled to qualified immunity. *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (instructing the district court to dismiss a claim with prejudice because the defendants were entitled to qualified immunity); *see also Lamle v. Eads*, 134 F.4th 562, 567 (10th Cir. 2025) ("[W]e affirm the dismissal with prejudice because [defendant] is entitled to qualified immunity on the claim for damages.").

### B. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law negligence claim.

Plaintiff's remaining claim is for negligence under state law. SAC ¶¶ 48–53. Defendant Burton moves to dismiss Plaintiff's negligence claim, arguing that he is immune under Oklahoma's GTCA. Motion at 12–15. Plaintiff argues that Defendant Burton is not immune under the GTCA because he was not acting in good faith and was therefore acting outside the scope of his employment as an officer of the Oklahoma City Police Department. SAC ¶¶ 39–40, 43–44; Response at 8–13.

"When a federal district court has original jurisdiction over a civil cause of action, [28 U.S.C.] § 1367 determines whether it may exercise supplemental jurisdiction over other claims that do not independently come within its jurisdiction, but that form part of the same Article III 'case or controversy.'" *Jinks v. Richland Cnty.*, 538 U.S. 456, 458 (2003). Section 1367(a) provides as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or
controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

But simply because a district court may exercise supplemental jurisdiction does

not mean that it should. Indeed, § 1367(c) "describe[s] situations in which a federal court

may or must decline to exercise supplemental jurisdiction." *Jinks*, 538 U.S. at 459.

Specifically, § 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a
> claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over
> which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original
> jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for
> declining jurisdiction.

28 U.S.C. § 1367(c). In any of these situations, "federal law is not where the real action

is." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). "So although

supplemental jurisdiction persists, the district court need not exercise it: Instead, the court

may (and indeed, ordinarily should) kick the case to state court." *Id.*; *see also Barnett v.

Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir.

2020) (explaining that "[t]he Supreme Court has encouraged the practice of dismissing

state claims or remanding them to state court when the federal claims to which they are

supplemental have dropped out before trial," and the Tenth Circuit "has followed suit").

"[A] district court's deferral to a state court rather than retaining and disposing of state

14

law claims itself" promotes principles of "judicial economy, fairness, convenience and comity." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).

However, while dismissal is the preferred practice, "compelling reasons to the contrary" may suggest that a federal court should exercise its "discretion to try state claims in the absence of any triable federal claims." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Courts should exercise this discretion if, "given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.*

Upon careful consideration, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim under § 1367(c). The Court has dismissed the sole federal claim over which it had original jurisdiction. There are no unique compelling circumstances that would lead the Court to try Plaintiff's state claim in the absence of any federal claims. Defendant Burton's arguments turn on application of the GTCA, and Oklahoma's courts are better poised to interpret and apply a statute controlling the scope and extent of the state's waiver of sovereign immunity. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). The Court is reluctant to engage in unnecessary determinations of state law when it otherwise has no original jurisdiction, especially when such determinations involve the scope of the state's waiver of governmental immunity. *See* 28 U.S.C. § 1367(c)(1), (c)(3). Accordingly, the Court dismisses Plaintiff's negligence claim without prejudice. *See Ball*, 54 F.3d at 669

15

("[T]he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice . . . .").

## IV.   **CONCLUSION**

For these reasons, the Court GRANTS Defendant Burton's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 21]. Plaintiff Shirley Antwine's § 1983 claim is DISMISSED with prejudice because Defendant Burton is entitled to qualified immunity. Plaintiff's state-law negligence claim is DISMISSED without prejudice. A separate judgment will follow.

IT IS SO ORDERED this 18th day of June 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE